UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
NOV 13 2007
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

UNITED STATES OF AMERICA,

 Plaintiff,

v.

D-1 NADA NADIM PROUTY,
 a/k/a Nada Nadim Alley,
 a/k/a Nada Nadim Deladurantaye,
 a/k/a Nada Nadim Al Aouar,

 Defendant.
_____/

CRIMINAL NO. 07-20156

HON. AVERN COHN

VIO. 18 U.S.C. § 371
  18 U.S.C. § 1030
  18 U.S.C. § 1425

## SECOND SUPERSEDING INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### General Allegations

1. On June 24, 1989, NADA NADIM PROUTY, also known as "Nada Nadim Alley," also known as "Nada Nadim Deladurantaye," also known as "Nada Nadim Al Aouar," defendant herein, first entered the United States from Lebanon on a one year non-immigrant student visa.

2. After defendant's visa expired on June 11, 1990, she remained in the country residing in Taylor, Michigan with her sister, Elfat El Aouar, not named as a defendant herein, and Samar Khalil Nabbouh, also known as "Samar Khalil Spinelli," not named as a defendant herein.

3. On an unknown date between June 11, 1990, and August 9, 1990, while having overstayed her visa, defendant offered money to an unemployed United States citizen to marry her, expressly for the purpose of remaining in the United States and evading U.S. immigration laws.

4. On August 9, 1990, defendant married the U.S. citizen in a civil ceremony in Detroit, Michigan. As planned, defendant never lived as husband and wife with her fraudulent "husband" and the marriage was never consummated sexually. Rather, defendant continued to live with Elfat El Aouar and Samar Khalil Nabbouh.

5. Between August 29, 1990 and May 31, 1994, NADA NADIM PROUTY, then known as "Nada Nadim Deladurantaye," defendant herein, submitted a series of written statements under oath to immigration authorities purporting to verify the validity of the fraudulent marriage.

6. On November 16, 1992, at defendant's request, Talal Khalil Chahine, not named as a defendant herein, wrote a letter for submission into defendant's immigration file attesting to the validity of the marriage and falsely stating that he knew defendant and her husband "in a professional and a personal manner."

7. On November 16, 1992, defendant's boyfriend, at defendant's request, also wrote a letter for submission into defendant's immigration file falsely claiming that defendant and her "husband" resided together and that the boyfriend was "good friends" with the husband.

8. On November 23, 1992, defendant forged the signature of her fraudulent husband on Form I-751, Petition to Remove the Conditions on Residence under

penalty of perjury and just below a certification that the marriage "was not for the purpose of procuring an immigration benefit."

9. On August 5, 1994 NADA NADIM PROUTY, defendant herein, procured her United States citizenship under the name "Nada Nadim Deladurantaye."

10. On January 17, 1995, NADA NADIM PROUTY, defendant herein, caused to be filed in the Wayne County, Michigan, Circuit Court a Complaint for Divorce wherein she falsely alleged that she and her fraudulent husband "lived and cohabited together as husband and wife until on or about December 15, 1994."

11. At all times relevant to this information, La Shish, Inc. was a chain of Middle Eastern restaurants located in the Detroit, Michigan metropolitan area owned by Talal Khalil Chahine, not named as a defendant herein. From May 1992 through April 1993, and again from August through November 1994, NADA NADIM PROUTY, then known as "Nada Nadim Deladurantaye," was employed at La Shish, Inc. as a waitress and hostess.

12. On or about April 21, 1999, through a series of false representations and use of her fraudulently procured proof of U.S. citizenship, NADA NADIM PROUTY, then known as "Nada Nadim Alley," defendant herein, obtained employment with the United States Department of Justice as a Special Agent for the Federal Bureau of Investigation (FBI). During all times material to this Information, it was a prerequisite to FBI employment that one be a United States citizen.

13. As a Special Agent, defendant was granted a security clearance and assigned to the FBI's Washington Field Office (WFO) to work on an extraterritorial

squad investigating crimes against U.S. persons overseas. During her tenure with the FBI, Defendant was not assigned to work on investigations involving the international terrorist group Hizballah.

14. On August 22, 2000, defendant's sister, Elfat El Aouar, not named as a defendant herein, entered into a marriage with Talal Khalil Chahine, not named as a defendant herein, under the tenets of Shia Islam.

15. On or about September 19, 2000, while employed as an FBI Special Agent at WFO, NADA NADIM PROUTY, then known as "Nada Nadim Alley," defendant herein, utilized the FBI's computerized Automated Case System (ACS) without authorization, and beyond her authorized access, to query her own name, her sister Elfat El Aouar's name, and the name of her brother-in-law, Talal Khalil Chahine. During all times material to this Information, the use of the FBI's ACS system was limited to official business.

16. At all times material to this Information, it was contrary to FBI policy and procedures for an FBI agent to take classified information home. During her tenure with the FBI, defendant violated FBI policy and took an unknown quantity of classified information home with her.

17. In August 2002, Elfat El Aouar and Talal Khalil Chahine, not named as defendants herein, attended a fund raising event in Lebanon. The keynote speakers for the event were Chahine and Sheikh Muhammad Hussein Fadlallah, not named as a defendant herein. Sheikh Fadlallah had previously been designated by the U.S. Department of Treasury's Office of Foreign Asset Control as a Specially Designated

Global Terrorist based upon his status as a leading ideological figure with Hizballah.

18. Effective October 8, 1997, the U.S. Secretary of State made findings that Hizballah, also known as "Party of God," is a foreign organization that engages in terrorist activity which "threatens the security of United States nationals or the national security of the United States."

19. On or about June 29, 2003, through a series of false representations and use of her fraudulently procured proof of U.S. citizenship, NADA NADIM PROUTY, then as now known as "Nada Nadim Prouty," defendant herein, voluntarily left her position with the FBI and obtained employment with the Central Intelligence Agency (CIA). During all times material to this Information, it was a prerequisite to CIA employment that one be a United States citizen.

20. On or about, June 16, 1995, Defendant obtained a U.S. Passport based upon her fraudulently obtained U.S. Citizenship, and thereafter renewed it when required.

21. At various times between September 9, 1998 and July 12, 2007, defendant traveled to, from and outside the United States on a U.S. Passport.

## **COUNT ONE**
## **(Conspiracy – 18 U.S.C. § 371)**

D-1 NADA NADIM PROUTY

The general allegations set forth above are hereby incorporated by reference as if fully set forth herein.

From on or about April 10, 1990 through the date of this Information, within the Eastern District of Michigan, Southern Division, and elsewhere, NADA NADIM PROUTY, defendant herein, conspired and agreed together with others both known and unknown to the United States Attorney:

1) to defraud the United States of valuable benefits of U.S. citizenship including U.S. passports and U.S. government employment; and

2) to commit the following offenses against the United States:

   a. Marriage Fraud in violation of 8 U.S.C. § 1325(c);

   b. Naturalization Fraud in violation of 18 U.S.C. § 1425(a);

   c. Perjury in violation 18 U.S.C. § 1546;

   d. False Statements Under Oath in Naturalization Proceedings in violation of 18 U.S.C. § 1015(a);

   e. Use of Fraudulently Procured Proof of U.S. Citizenship in violation of 18 U.S.C. § 1015(c);

   f. False Statements to Government Agents in violation of 18 U.S.C. § 1001; and

   g. Use of Fraudulently Procured U.S. Passports in violation of 18 U.S.C. § 1542.

## Ways, Manner and Means

The ways, manner and means of the conspiracy are described as follows.

It was part of the conspiracy that NADA NADIM PROUTY, defendant herein, and other co-conspirators, entered the United States from Lebanon on a non-immigrant student or visitor visa.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, overstayed their non-immigrant visas or otherwise failed to depart the United States as scheduled on their visa.

It was further a part of the conspiracy that the alien members of the conspiracy, including NADA NADIM PROUTY, with the assistance of one another, located U.S. citizens willing to marry them in exchange for money.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, entered into marriages with the hired U.S. citizens in name only, having no intention of living together as husband and wife and solely for purposes of evading U.S. immigration laws.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, caused their U.S. citizen husbands to sign immigration documents under oath verifying the validity of the fraudulent marriages and falsely claiming to be residing with their wives.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, resided together at the same address both before and after their marriage ceremonies.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, in coordination with one another, falsified letters claiming to know their fraudulent husbands and verifying the legitimacy of the fraudulent marriages.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, in coordination with one another, forged letters by real or fictional individuals purporting to verify the legitimacy of the fraudulent marriages.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, in coordination with one another, forged the signatures of their fraudulent husbands on official immigration documents.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, served as references for one another to backstop any inquiries into their fraudulent marriages.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, obtained documentation permitting them to permanently live and reside in the United States.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, traveled internationally in and out of the United States once they had obtained permission to permanently live and reside in the United States.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, obtained United States citizenship and naturalization certificates as proof of their citizenship.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other

co-conspirators, in coordination with one another, divorced their fraudulent U.S. citizen husbands shortly after obtaining their naturalization certificates.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, in coordination with one another, caused documents containing false statements attesting to the validity of the marriages to be submitted to the Wayne County (Michigan) Circuit Court to effectuate divorce proceedings. Like the marriages and immigration file submissions, the divorces were coordinated, timed, and scripted, utilizing the same mailing address and the same attorney.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, utilized their naturalization certificates to obtain U.S. passports permitting them to travel internationally as U.S. citizens.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, utilized their U.S. passports to travel to various countries around the world as U.S. citizens.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, utilized their naturalization certificates and U.S. passports, as proof of their U.S. citizenship, to obtain U.S. government employment only available to U.S. citizens, including employment as a Special Agent of the Federal Bureau of Investigation, an employee of the Central Intelligence Agency, and a commissioned officer in the U.S. military.

It was further a part of the conspiracy that NADA NADIM PROUTY, and other co-conspirators, utilized their naturalization certificates and U.S. passports, as proof

of their U.S. citizenship, to obtain security clearances and access to sensitive U.S. government secrets, sources and methods not otherwise available to them.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, NADA NADIM PROUTY, defendant herein, and her co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere:

1. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, NADA NADIM PROUTY, then known as "Nada Nadim Alley," defendant herein, signed Form FD-140 stating that her divorce from her first marriage was due to "irreconcilable differences."

2. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, NADA NADIM PROUTY, then known as "Nada Nadim Alley," defendant herein, signed Form FD-140 referencing her naturalization certificate number as proof of her U.S. citizenship.

3. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, NADA NADIM PROUTY, then known as "Nada Nadim Alley," defendant herein, signed Form FD-140 listing Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," not named as a defendant herein, as a reference.

4. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, NADA NADIM PROUTY, then known as "Nada Nadim

Alley," defendant herein, signed Form FD-140 stating that she was not "aware of any information about [her]self or any person with whom [she is or has] been closely associated (including relatives and roommates) which might tend to reflect unfavorably on [her] reputation, morals [or] character . . . ."

5. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, NADA NADIM PROUTY, then known as "Nada Nadim Alley," defendant herein, signed Form FD-140 referencing the naturalization certificate number of her sister Elfat El Aouar, not named as a defendant herein, as proof of her sister's U.S. citizenship.

6. On or about September 11, 1998, NADA NADIM PROUTY, then known as "Nada Nadim Alley," defendant herein, told FBI Special Agent John Camera that she was concealing no matters in her background which could be used for purposes of pressuring or influencing her.

7. On or about October 15, 1998, Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," not named as a defendant herein, told an FBI Special Agent that she was not aware of any activity or conduct in the background of NADA NADIM PROUTY, then known as "Nada Nadim Alley," defendant herein, which could be used in any way to subject defendant to influence, pressure, coercion or compromise, or which would negatively reflect upon defendant's character.

8. On or about October 15, 1998, Talal Khalil Chahine, not named as a defendant herein, told a FBI Special Agent that he was not aware of any activity or conduct in the background of NADA NADIM PROUTY, then known as "Nada

Nadim Alley," defendant herein, which could be used in any way to subject defendant to influence, coercion or compromise, or which would negatively reflect upon her character.

9. While applying for employment with the Central Intelligence Agency (CIA), on or about February 15, 2003, NADA NADIM PROUTY, defendant herein, signed Form SF-86 referencing her naturalization certificate number as proof of her U.S. citizenship.

10. While applying for employment with the CIA, on or about February 15, 2003, NADA NADIM PROUTY, defendant herein, signed Form SF-86 referencing her fraudulent marriage and identifying her fraudulent husband as a former "spouse."

11. While applying for employment with the CIA, on or about February 15, 2003, NADA NADIM PROUTY, defendant herein, signed Form SF-86 referencing the naturalization certificate number of her sister, Elfat El Aouar, not named as a defendant herein, as proof of her sister's U.S. citizenship.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Unauthorized Computer Access – 18 U.S.C. § 1030)

D-1 NADA NADIM PROUTY

The general allegations set forth above are hereby incorporated by reference as if fully set forth herein.

On or about June 4, 2003, within the Eastern District of Michigan, Southern Division, and elsewhere, NADA NADIM PROUTY, defendant herein, while employed as a Special Agent of the Federal Bureau of Investigation (FBI), an agency of the United States, intentionally accessed the FBI's Automated Case Support (ACS) computer system and obtained information from case file number DE-74791, Serial 489, a national security investigation conducted by the FBI's Detroit Field Office concerning the designated foreign terrorist organization, Hizballah; defendant did so without authorization and in excess of her authorized access within the ACS system; all in violation of Title 18, United States Code, Section 1030(a)(2)(B).

## COUNT THREE
### (Naturalization Fraud – 18 U.S.C. § 1425)

D-1 NADA NADIM PROUTY

The general allegations set forth above are hereby incorporated by reference as if fully set forth herein.

On or about August 5, 1994, within the Eastern District of Michigan, Southern Division, and elsewhere, NADA NADIM PROUTY, defendant herein, knowingly procured, and attempted to procure, contrary to law, her own naturalization as a

United States citizen, all in violation of Title 18, United States Code, Section 1425(a).

STEPHEN J. MURPHY
United States Attorney

ERIC M. STRAUS
Chief, National Security Unit

KENNETH R. CHADWELL
Assistant United States Attorney

MARK J. JEBSON
Special Assistant U.S. Attorney
Senior Assistant Chief Counsel
U.S. Immigration and Customs Enforcement

Dated: November 13, 2007

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>07-20156 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: KRC |

**Case Title:** USA v. Nada Nadim Prouty

**County where offense occurred:** Wayne

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

____Indictment/__X__Information --- **no prior complaint.**
____Indictment/____Information --- based upon prior complaint [Case number: ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information:

**Superseding to Case No: 07-20156**        **Judge: Cohn**

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges |
|---|---|
| Nada Nadim Prouty | 18 U.S.C. §§ 371, 1030, 1425 |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

November 13, 2007
Date

Kenneth R. Chadwell
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:  (313) 226-9698
Fax: (313) 226-3413
E-Mail address:  ken.chadwell@usdoj.gov
Attorney Bar #:  P39121

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/20/04